## Huff v. Aultman & Schuster.

1. **Intoxicating Liquors:** WRONGFUL SALE: DEATH OF HUSBAND: CONTRIBUTORY ACTS OF WIFE: QUESTION FOR JURY. In an action for damages against one who wrongfully sold liquors to plaintiff's husband, which resulted in his intoxication and death, wherein it was shown that plaintiff was accustomed to let her husband have portions of his wages previously deposited with her, when she had reason to believe that he would purchase liquors with the money and become intoxicated, *held* that it was properly left to the jury to determine from all the circumstances, as shown by the evidence, whether plaintiff thus *voluntarily* contributed to the injury; with an instruction that, if she did, she could not recover. (Compare *Engleken v. Hilger*, 43 Iowa, 563.)

2. ———: ———: ———: DAMAGES: EVIDENCE OF HABITUAL DRUNKENNESS. In such action, evidence that plaintiff's husband had been an habitual drunkard for twenty years before his death, *held* incompetent to reduce the measure of damages; (Compare *Woolheather v. Risley*, 38 Iowa, 486;) but evidence of his habitual drunkenness was properly admitted on plaintiff's behalf for the purpose of showing that the sale of beer to him was unlawful. (See *Myers v. Conway*, 55 Iowa, 166.)

3. **Evidence:** RES GESTÆ: HEARSAY. The declarations of witnesses in relation to the transactions of which they have testified, made to third persons soon after the occurrence of the transactions, are not competent, as part of the *res gestæ*, to corroborate the testimony of the witnesses, where the witnesses have not in any way participated in the transactions. The evidence of such declarations was mere hearsay.

4. **Practice:** RECALLING WITNESS: DISCRETION OF COURT. The court may, in its discretion, after the defendant has rested, allow plaintiff to recall one of defendant's witnesses for a further examination, with a view to laying a foundation for his impeachment.

5. **Practice on Appeal:** REVIEWING INSTRUCTIONS: DEFECTIVE RECORD. Where the record on appeal does not contain the instructions given by the court, this court cannot say that there was error in refusing to give certain other instructions asked.

*Appeal from Polk Circuit Court.*

SATURDAY, JUNE 12.

ACTION for damages on account of the injury to plaintiff's means of support caused by the intoxication of her husband. Two causes of action are alleged in the petition. In the first count it is charged that for a long time prior to the fifth day of Febuary, 1884, plaintiff's husband had been an habitual drunkard, and that on that day defendants sold him certain intoxicating liquors, thereby causing him to become intoxicated, and that while he was so intoxicated he fell from a bridge and was killed. It is alleged in the second count that during the five years immediately preceding the death of plaintiff's husband the defendants habitually sold him intoxicating liquors, thereby causing him to become an habitual drunkard, and that she was injured in her means of support by reason of his intoxication. On the trial the circuit court withdrew the second count from the consideration of the jury. Plaintiff recovered a verdict and judgment on the first count, from which defendants appeal.

*D. O. Finch* and *Parsons, Perry & Sherman,* for appellants.

Huff v. Aultman & Schuster.

*W. H. McHenry, Jr.*, and *Barcoft & Bowen*, for appellee.

REED, J.—Defendants are the proprietors of a brewery in the city of Des Moines, and at the time in question they kept a bar in their building at which they sold beer by the glass. It was proved on the trial that on the evening of the fifth of Feburary, 1884, plaintiff's husband was at the brewery, and that he then purchased and drank one or more glasses of beer. It was also proved that for two years before his death he had been in the habit of becoming intoxicated nearly every day, and there was evidence which tended to prove that he was intoxicated on the evening in question. He left defendants' place about 9 o'clock, going in the direction of his home. The next morning his dead body was found on the ice beneath the bridge, between defendants' brewery and his home. Plaintiff's theory is that he attempted to cross the bridge while in a drunken condition, and fell through a hole therein, and was killed by the fall upon the ice below, and there was evidence from which the jury were warranted in finding that his death occurred in that manner. He was a day laborer, working chiefly on the streets of the city, and ordinarily earned from $30 to $40 per month.

I. Plaintiff was a witness in her own behalf, and, on cross-examination, she testified that it was the custom of her husband, when he received his wages, to give a portion of the money to her, but that it frequently happened that, after having given her money, he would come to her and request her to return a portion of it to him, which she would do, and that this had been their custom for many years; and she admitted that she knew when she furnished him money on such occasions that he intended to purchase intoxicating liquors with it, and that he frequently became intoxicated on liquors purchased with money so obtained from her. She

1. INTOXICA-TING liquors: wrongful sale: death of husband: contributory acts of wife: question for jury.

testified that she gave him the money to keep him in a good humor, and keep him from getting angry at her.   Counsel for defendants contend that upon this state of facts plaintiff is not entitle to recover for the injury of which she complains. Their position is that, as she furnished him the money with knowledge of his habits, and of the use to which he intended to put it, she thereby contributed to his intoxication, and for that reason the law will not afford her a remedy for the injury which she sustained in consequence of his intoxication. They asked the circuit court to instruct the jury in accordance with that view.    But the court, as we infer from the record, left it to the jury to say from the evidence whether plaintiff voluntarily contributed to the intoxication of her husband, and instructed them that, if she did so, she was not entitled to recover.    In that respect the circuit court followed the holding of this court in *Engleken v. Hilger*, 43 Iowa, 563.    The correctness of the ruling in the abstract is not questioned by counsel.    They insist, in effect, however, that it should have been determined as matter of law, from the undisputed evidence, that plaintiff had precluded herself from all right of recovery for the injury complained of, by her acts in voluntarily delivering the money to her husband while knowing the use to which he intended to appropriate it.    But we are of the opinion that the question presented was one upon which plaintiff was entitled to have the verdict of the jury.    It cannot be said that the conclusion that she voluntarily contributed to the intoxication of her husband is the only deduction which can fairly or reasonably be drawn from the facts proven.    It must be borne in mind that the money, while it was in plaintiff's possession, in fact belonged to her husband.    It was his earnings, and he had a right to the possession and control of it.   He was under a moral and legal obligation, it is true, to afford a support for his wife and children, but that fact did not vest her with the title or right of possession in the money he earned. It must be borne in mind, also, that the probable result of a

refusal by her to deliver the money to him at his request, on any occasion, would have been the refusal by him to pay any portion of his future earnings to her. She was, to some extent, under the compulsion of necessity. She was dependent on the earnings of her husband for support. But his habits were such that those earnings, except the pittance which she was able to obtain and keep from him, were squandered at the saloon and brewery; and on every occasion when he made a demand upon her for a portion of the money he had given her she was probably remitted to a choice between the surrender of the sum demanded and the loss of the whole of his earnings in the future. It was not for the court to say that she necessarily consented to his drunkenness because she chose the lesser of these evils. We think the question was properly submitted to the jury, and their finding upon it is abundantly sustained by the evidence.

II. Defendants offered to prove on the trial that plaintiff's husband had been an habitual drunkard for twenty years before his death. This evidence was offered for the purpose of affecting the measure of plaintiff's damages. The circuit court held that it was incompetent for that purpose. The holding is supported by *Woolheather v. Risley*, 38 Iowa, 486.

2. ——: ——: ——: dam-ages: evidence of habitual drunkenness.

III. After the court excluded the evidence offered by defendants to prove the length of time that plaintiff's husband had been in the habit of becoming intoxicated, they moved to exclude all evidence on the subject of his previous habits, but this motion was overruled. The ruling is clearly right. At the time of the occurrence in question the sale of beer, except to minors or persons who were intoxicated, or were in the habit of becoming intoxicated, was not forbidden; and to entitle plaintiff to recover on account of the intoxication of her husband, caused by the sale of beer to him, she was required to prove that the sale was unlawful. *Myers v. Conway*, 55 Iowa, 166. The evidence which tended to prove his

habit of becoming intoxicated was therefore material.     It tended to establish a material fact in the case.

IV.     The defendant sought to show that plaintiff's husband came to his death by injuries inflicted by some third person while he was upon the bridge.     They introduced three witnesses, who testified that they crossed said bridge at about 10 o'clock on the evening in question, and that while crossing it they saw two or three persons on the opposite side, and heard groans and other sounds, indicating that some person upon the bridge had been injured, and was suffering pain.     They also offered to prove the statements and declarations made by these witnesses concerning what they saw and heard upon the bridge to persons whom they met soon after they crossed it.     But this evidence was excluded on plaintiff's objection.     It is contended that this evidence should have been admitted on the ground that the statements and declarations of the parties constituted part of the *res gestœ*.     But this position is clearly not sound.     It is not claimed that the witnesses whose declarations were sought to be introduced in evidence in any manner participated in the transactions to which the declarations related; nor was there any inquiry as to the motive or purpose with which they acted; nor were the declarations explanatory of their conduct at the time.     They consisted simply of a statement of what they claimed to have witnessed upon the bridge, and they were properly rejected as being mere heresay.

3. EVIDENCE: res gestæ: hearsay.

V.     After defendants had rested, plaintiff's counsel asked leave to recall a witness, who had been examined by defendants, for the purpose of examining him further, and of laying the foundation for his impeachment, and, against defendants' objection, leave to do this was granted.     This action of the court is assigned as error.     The matter was one peculiarly within the discretion of the trial court, and it does not appear to us that there was any abuse of discretion in the action complained of.

4. PRACTICE: recalling witness: discretion of court.

VI.     The refusal of the circuit court to give certain

instructions asked by defendants' counsel is assigned as error; 5. PRACTICE on appeal: reviewing instructions: defective record but the instructions actually given by the court are not contained in the record, and it does not appear but that substantially the same instructions were given by the judge on his own motion. We will presume, in the absence of any showing to the contrary, that the jury were properly instructed on all questions arising in the case.

We have found no error in the record, and the judgment must be

AFFIRMED.